UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARA AINTABLIAN, | ) | 1:08-CV-00948 LJO JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, | ) | |
| | ) | |
| Respondent | ) | |

Petitioner Ara Aintablian ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a sentence of seven years to life for a conviction in 1982 for kidnaping for ransom and kidnaping for robbery. (Answer at 1; Pet. at 2). Petitioner's life term was originally stayed pursuant to a one year jail sentence and five years probation. In 1987, Petitioner was convicted of voluntary manslaughter and two counts of a assault with a firearm, resulting in the reinstatement of the life term. (Answer at 1). Petitioner has finished serving the determinate twenty year sentence resulting from the 1987 convictions. (See Pet. Ex. B, Los Angeles County Superior Court decision, at 2).

Petitioner does not challenge either of his convictions in this action; rather, Petitioner contends that the denial of parole by the California Board of Parole Hearings (the "Board"), whom

he appeared before in November 2006 for a parole consideration hearing, violates his constitutional rights. (Answer at 1).

Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles County Superior Court, challenging the Board's denial of parole. (*See* Answer Ex. 2). The Los Angeles County Superior Court issued a reasoned opinion rejecting Petitioner's claims. (*See* Answer Ex. 3).

Petitioner filed a petition for writ of habeas corpus with the California Supreme Court, which summarily denied his petition. (*See* Answer Ex. 5).

On July 7, 2008, Petitioner filed the instant federal petition for writ of habeas corpus. Respondent filed an answer, responding to the allegations set forth in the petition, on January 6, 2009. Respondent admits that Petitioner has exhausted his state remedies and that the instant petition is timely. (Answer at 2). Petitioner filed a reply to the Respondent's answer on January 26, 2009.

## FACTUAL BACKGROUND

As the facts of the commitment offense are considered by the Board in determining whether Petitioner is suitable for parole, the facts of the commitment offense are thus relevant in the Court's inquiry of whether the State court's decision upholding the denial of parole was objectively unreasonable. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). The Board incorporated into the record a summary of the offense, taken from the May 2006 Board Report. The report stated:

> On September 1st of 1982, [Petitioner] who was armed with a gun and three accomplices kidnapped [sic] a 69-year-old male victim from his residence and later negotiated a $40,000 ransom for the victim's safe return. The following day two of the accomplices were arrested after they went to a drop point to pick up the ransom. The victim later had contacted a relative and informed him that he was still being held. [Petitioner] got on the telephone and instructed the victim's relative to have the two accomplices release [sic] and to pay the ransom. [Petitioner] was later arrested when he went to a nearby police station with the victim and another accomplice. The investigation disclosed that [Petitioner] and his accomplices planned on splitting the money four ways. [Petitioner], when interviewed about this offense stated "I committed the offense because I needed the money for surgery for my mother."

(Pet. Ex. A, Parole Hearing Transcript, at 4-5)

When questioned, Petitioner also revealed that he had previously worked for the victim and had used their previous relationship to gain entry into the victim's home. (Id. at 10, 68). The victim

was an elderly man with a heart condition. (Id. at 67-68).

As noted earlier, Petitioner received a sentence of one year in county jail, five years probation, and a life sentence. Petitioner's life sentence was stayed pursuant to the five years probation. In 1987, prior to the completion of the probation, Petitioner was convicted of voluntary manslaughter. Pursuant to the California regulations, Petitioner's conviction for voluntary manslaughter implicated several factors that a Board must consider in making a suitability determination–including prior criminal misconduct reliably documented and previous record of violence. Cal. Code Regs., tit. 15, §§ 2402(b) and (c)(2). The regulations specifically mandate that the Board consider whether "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." Cal. Code Regs., tit. 15, § 2402(c)(2). Thus, the Board also read into the record the facts of that offense as derived from the California Court of Appeal's opinion, which stated:

> [Petitioner] does not challenge the sufficiency of the evidence establishing that on the evening of November 23rd, 1986, he caught Mrhran Telayan, another person Gregor Kendjian, and Harry Mirdjanian, in the act of burglarizing the Honda owned by [Petitioner]'s sister and fired a number of 9 millimeter rounds from his is [sic] automatic oozie at their vehicle as they fled the scene. One bullet struck Mirdjanian's head and killed him. [Petitioner] testified on his own behalf stating he had not intended to fire the weapon but only could use it for self-protection when he left his house to confront the burglars. He claimed he yelled at the three youths to scare them, and heard one of them say, "Get him. Get him," just before they entered their own car. The car them moved slowly towards him and stopped. [Petitioner] claimed the windows were rolled down, and he saw objects he thought were guns in the occupant's hands...Evidence presented by the prosecution tended to show that one of the youths urged the other to "Get in. Get in" the vehicle as [Petitioner] approached. And that Mirdjanian was sitting with his head ducked down next to a closed window when [Petitioner] fired the fatal shot...Believing he was about to be a victim of a drive by gang shooting, he fired six or seven shots at the vehicle, which sped off. [Petitioner] stated he subsequently disposed of the weapon and the shells left in the area of the shooting because he remembered his probation officer had stated that firing a weapon would constitute a violation of his probation.

(Id. at 5-7).

## DISCUSSION

### I. Jurisdiction and Venue

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

1 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by
2 the United States Constitution stemming from the Board's denial of parole. Petitioner is currently
3 incarcerated at Avenal State Prison in the city of Avenal, California. (Pet. at 2). The city of Avenal
4 is located in Kings County and is consequently within this judicial district. 28 U.S.C. § 84(b).
5 Thus, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. §
6 2241(d).

7 **II.     ADEPA Standard of Review**

8       All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and
9 Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v.*
10 *Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert*.
11 *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th
12 Cir. 1996), *cert*. *denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320
13 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was
14 filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S.
15 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that
16 Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the
17 exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461
18 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir.
19 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a
20 State court judgment even though he is challenging the denial of his parole).

21       Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner]
22 demonstrates that the State court decision denying relief was 'contrary to, or involved an
23 unreasonable application of, clearly established federal law, as determined by the Supreme Court of
24 the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. §
25 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71. As a threshold matter, this Court must "first
26 decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the
27 United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is
28 "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of

[the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537

U.S. 1149 (2003).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*.

Here, the only State courts to have adjudicated Petitioner's claims were the Los Angeles County Superior Court and the California Supreme Court. As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" the court's decision to the last reasoned decision; namely, that of the Los Angeles County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claim

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254).

Petitioner contends that the Board's decision in November 2006 was illegal as the Board incorrectly characterized and gave undue weight to his commitment offense while not fully considering favorable factors in determining his parole suitability. (Pet. at 5). Petitioner contends

1  that such actions deprived him of the liberty interested guaranteed by the Due Process Clause of the
2  Fourteenth Amendment as the evidence the Board relied on could not support the ultimate
3  conclusion the Board was required to reach.  Petitioner further contends that the Los Angeles
4  Superior Court incorrectly weighed the suitability factors by failing to acknowledge Petitioner's
5  psychological evaluation and by relying on immutable factors such as the commitment offense.

6       ***A.     Legal Standard for Denial of Parole***

7       "We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty
8  or property interest which has been interfered with by the State; the second examines whether the
9  procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127.
10 The United States Constitution does not, by itself, create a protected liberty interest in a parole date.
11 *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).   In Respondent's answer, Respondent argues that
12 Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit
13 authority to the contrary.  (Answer at 2-3).  The Ninth Circuit has held that a prisoner possess a
14 liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a
15 presumption "that parole release will be granted' when or unless certain designated findings are
16 made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d
17 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in
18 holding that California's parole scheme gives rise to a cognizable liberty interest in release on
19 parole).  California Penal Code section 3041 contains the requisite mandatory language, thus vesting
20 California prisoners "whose sentence provide for the possibility of parole with a constitutionally
21 protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by
22 the procedural safeguards of the Due Process Clause."  *Irons*, 505 F.3d at 850; *see also McQuillion*,
23 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003).  Consequently, the Court finds
24 that Petitioner has a protected liberty interest in a parole date.

25      A finding that a liberty interest exists does not end the Court's inquiry as the Due Process
26 Clause is not violated where the denial of a petitioner's liberty interests follows the State's
27 observance of certain procedural safeguards.  *See Greenholtz*, 442 U.S. at 12.  Respondent contends
28 that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and

for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (*Id*. at 5).

Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole. The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a

release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime."[1] Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

### B. State Court Decision

After reviewing the record, the Court does not find that the Los Angles County Superior Court unreasonably applied the some evidence standard. *See* 28 U.S.C. § 2254(d)(1). The Superior Court's decision found Petitioner's current dangerousness was evidenced by at least two of the factors relied upon by the Board to deny Petitioner's parole–specifically, the commitment offense and Petitioner's criminal misconduct while on probation for the commitment offense. Another factor that the Board relied on in finding that Petitioner posed a current risk of danger to the public safety

---

[1] The statute specifically states: "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

was Petitioner's disciplinary record while incarcerated.  The Court finds that those three factors–the commitment offense, Petitioner's criminal misconduct while on probation, and Petitioner's prison disciplinary record–constitute the modicum of evidence required to meet the some evidence standard.

    A significant portion of the petition is devoted to the argument that the Board and the Superior Court ignored or disregarded the plethora of evidence favoring a finding of suitability.  The Court notes that "[a]scertaining whether [the some evidence] standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  *Hill*, 472 U.S. at 455; *see also Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994).  The record reveals that the Board did consider factors that favored release–namely Petitioner's solid parole plans, lack of prior criminal history, stable social history, supportive psychological evaluations, participation in self-help programs and therapy, and completion of academic and vocational training.  (Pet. Ex. B at 86-88).  However, as Petitioner notes, the Board found that these factors did not outweigh the unsuitability factors.  In adjudicating this claim, "the superior court acknowledged a majority of Petitioner's post-conviction gains."  (Pet. at 5-viii).  The Superior Court correctly refrained from re-weighing the suitability and unsuitability factors and instead focused its inquiry on whether there was some evidence to support the finding that Petitioner posed a current risk of danger to the public safety.  The Superior Court concluded that the commitment offense, combined with Petitioner's criminal misconduct while on probation for the commitment offense, constituted some evidence of current dangerousness.  Petitioner's argument that the Board and the Superior Court incorrectly weighed the factors is not a matter this Court may address nor does it offer Petitioner a basis for habeas corpus relief.  *See Powell*, 33 F.3d at 42 (finding that court cannot re-weigh the factors supporting parole suitability and the factors supporting parole unsuitability).

    Likewise, the Court finds that Petitioner's argument, that the Board and Superior Court's characterization of the commitment offense was incorrect, unpersuasive.  The Superior Court found that the Board's characterization of the commitment offense, as having been carried out in a dispassionate and calculated manner, was supported by the evidence.  (Pet. Ex. B at 1).  The Superior

Court relied on Petitioner's admission that he and his accomplices had concocted the plan to abduct the victim, that Petitioner enlisted the help of three accomplice, and that Petitioner used his prior acquaintance with the victim in committing the crime. (Id). Furthermore, the Superior Court noted that the victim was vulnerable. The record reveals that the victim had a heart condition, was elderly, and had been abducted by Petitioner and his accomplices in his own home. (Pet. Ex. B at 68). The Court is satisfied that this evidence provides a factual basis upon which the Board, and Superior Court, could conclude that the crime was dispassionate and calculated. *Hill*, 472 U.S. at 456 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact").

Lastly, Petitioner contends that continued reliance on immutable factors, such as his commitment offense and criminal misconduct prior to incarceration, violates his right to due process of the law. The California Supreme Court recently held that even where the commitment offense was particularly egregious, reliance on this immutable factor may violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). The *Lawrence* court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226. Similarly, the Ninth Circuit has previously warned that continued reliance on immutable factors may not comport with the protections of the Due Process Clause. *See Irons*, 505 F.3d at 854; *Biggs*, 334 F.3d at 917.

However, Petitioner's case is distinguishable from *Lawrence* in two ways. First, the Board did not rely solely on immutable factors as Petitioner's disciplinary record supported a finding that Petitioner was currently unsuitable for parole. Petitioner had several disciplinary violations, including several 115's, with the most recent infraction occurring only four years prior to the hearing. While the Board noted that none of Petitioner's disciplinary violations were violent offenses,

U.S. District Court
E. D. California

11

Petitioner's inability to remain discipline free until very recently can constitute evidences an inability to follow the rules that is probative of whether Petitioner is a current risk of danger to the public safety. *See* Cal. Code Regs., tit. 15, § 2402(c)(6). Second, while the Board relied on Petitioner's prior criminal misconduct, which is immutable, the criminal misconduct here is probative of Petitioner's current dangerousness. As emphasized by the Superior Court, Petitioner committed the crime while he was on probation for the commitment offense; thus making the offense probative of whether Petitioner might commit a similar offense if released on parole. Furthermore, the fact that the prior criminal misconduct was a violent offense that resulted in the death of another person also indicates that Petitioner poses a current risk of danger to the public safety.

The Court, like the Superior Court and the Board before it, acknowledges that there is evidence in the record to support a finding that Petitioner has rehabilitated. However, the Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Thus, the Court cannot say that the State court's conclusion, that the commitment offense combined with Petitioner's prior criminal misconduct and prison disciplinary record, constituted some evidence to support the Board's findings, was objectively unreasonable.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the

1 objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
2 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may
3 waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
4
5 IT IS SO ORDERED.
6 **Dated:   August 24, 2009**                     /s/ John M. Dixon
                                                   UNITED STATES MAGISTRATE JUDGE